# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLTON GREEN, | Civil Action No. 18-16303 (MCA) (LDW) |
| Plaintiff, | |
| v. | OPINION |
| J. SLAUGHTER, et al., | |
| Defendants. | |

**ARLEO, United States District Judge**

## I. INTRODUCTION

Plaintiff Carlton Green, currently confined at the Special Treatment Unit ("STU") in Avenel, New Jersey[1], has filed the instant Complaint, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff also filed a motion for leave to proceed *in forma pauperis* ("IFP"). The Court will grant Plaintiff's IFP application.

At this time, the Court must also screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons explained below, the Court will dismiss the Complaint's federal claims for failure to state a claim upon which relief may be granted under § 1915(e)(2)(B) and decline to exercise supplemental jurisdiction over the state

---

[1] Plaintiff is a civilly committed resident of the STU pursuant to his designation as a "sexually violent predator" under the New Jersey Sexually Violent Predator's Act, N.J. Stat. Ann. § 30:4-27.28. (ECF No. 1, Complaint at ¶ 5.)

law claims. The Court will grant Plaintiff leave to submit a proposed Amended Complaint that would also be subject to screening within 30 days with respect to those claims that are dismissed without prejudice.

## II. FACTUAL BACKGROUND

Plaintiff has sued the following individuals employed by the STU in their individual and official capacities: STU Administrator J. Slaughter; STU Associate Administrator Keisha Fisher; STU Assistant Superintendent C. Raupp; Senior Corrections Officer ("SCO") Amaker; Dr. Sumulatha Mannava; and Medical Director Hesham Soliman, as well as nurses Yvonne P. Paden and Jane Doe. Plaintiff seeks declaratory judgment and monetary damages from each defendant. (ECF No. 1, Complaint at ¶ 155.) Plaintiff also seeks injunctive relief from Defendants Slaughter, Fisher, and Raupp in the form of repairs to the elevator in the STU. (*Id.*)

Plaintiff alleges that on or about April 29, 2017 at around 5:45 a.m., he began to suffer from chills and shakes while in his cell. (*Id.* at ¶ 42.) Plaintiff states that when he attempted to use the bathroom, he lost consciousness and fell to the floor. (*Id.* at ¶¶ 42-44.) Plaintiff contends that although Defendant Amaker was supposed to conduct security rounds at approximately 6:00 a.m., Defendant Amaker never passed by Plaintiff's cell. (*Id.* at ¶ 47.) As a result, Plaintiff states he remained sprawled on the floor until another resident noticed him at around 8:25 a.m. and alerted Defendant Amaker to Plaintiff's condition. (*Id.* at ¶¶ 48-50) Defendant Amaker then summoned medical personnel. (*Id.* at ¶ 50.)

When Defendant Paden arrived at Plaintiff's cell, Plaintiff was largely unresponsive. (*Id.* at ¶¶ 52-53.) Defendant Amaker subsequently enlisted two other STU residents to place Plaintiff in a wheelchair and carry him down the stairs to the medical unit. (*Id.* at ¶ 54.) Plaintiff states that because the elevator in the STU was in disrepair, the other residents were forced to carry

2

him down the stairs in the wheelchair. (*Id.* at ¶¶ 54-58.) Plaintiff alleges that due to the combined weight of the wheelchair and his person, the residents assisting him lost their grip, dropping the wheelchair. (*Id.* at ¶ 56.) Plaintiff states he "almost" fell out of the wheelchair and down the remaining stairs. (*Id.* at ¶ 57.)

At the STU's medical unit, Plaintiff's vital signs were taken, he was provided with oxygen, and medical personnel called 9-1-1. (*Id.* at ¶¶ 67-68.) Plaintiff states Defendant Paden then administered three doses of Narcan to him. (*Id.* at ¶ 69.) Plaintiff admits he was temporarily revived, but only because the Narcan caused him to feel as though he was drowning. (*Id.*) Once Plaintiff was taken to the hospital, medical staff determined he was suffering from sepsis due to a complication from a urinary tract infection ("UTI"). (*Id.* at ¶ 73.) Plaintiff alleges hospital medical staff indicated he had been suffering from a UTI for a prolonged period of time. (*Id.* at ¶ 74.)

Plaintiff further alleges that prior to the events of April 29, 2017, he had been chronically ill and seen by Defendant Mannava at least three times. (*Id.* at ¶ 76.) Each time, Plaintiff states he complained of abdominal pain and difficulty urinating and he requested to visit with a urologist. (*Id.* at ¶ 77.) Plaintiff alleges Defendant Mannava did not send him to a urologist, but rather had Plaintiff's blood drawn and tested on each of those three visits. (*Id.* at ¶¶ 78-79.) Plaintiff states that at no time did Defendant Mannava diagnose him as suffering from a UTI. (*Id.* at ¶ 79.)

### III. **STANDARD OF REVIEW**

Under the Prisoner Litigation Reform Act ("PLRA"), district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is

3

frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a complaint under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The complaint must also allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler*, 578 F.3d at 210. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted).

Courts are required to liberally construe pleadings drafted by pro se parties. *See Tucker v. Hewlett Packard, Inc.*, No. 14-4699, 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a

plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV. ANALYSIS

As noted above, Plaintiff has sued several individuals employed by the STU in both their official and individual capacities.[2] The Court will consider whether he has stated a claim for relief against each these Defendants. As Plaintiff is currently civilly committed at the STU, his claims arise under the Fourteenth Amendment. *See Young v. Romeo*, 457 U.S. 307, 321-22 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are

---

[2] The Court notes that Plaintiff seeks relief in the form of monetary damages from Defendants Mannava, Paden, Doe, Soliman, and Brewer in both their official and individual capacities. However, §1983 claims for monetary damages against a state official in his or her official capacity are barred by the Eleventh Amendment. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989). "[A] state official sued in his or her official capacity is not a "person" for the purposes of § 1983 where the relief sought is monetary damages because the Supreme Court has not construed § 1983 as an abrogation of the states' Eleventh Amendment Immunity." *Lewis v. Wetzel*, 153 F. Supp. 3d 678, 699 (M.D. Pa. 2015) (citing *Will*, 491 U.S. at 63-71). Accordingly, Plaintiff's official capacity claims against Defendants Mannava, Paden, Doe, Soliman, and Brewer for monetary damages are barred. Since the Eleventh Amendment does not bar suits against officials in their personal capacities, even if the actions that are the subject of the suit were part of the officials' governmental duties, the Court will still consider the claims against these defendants in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991).

5

designed to punish."); *see also Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979). While Eighth Amendment protections apply after a prisoner has been convicted and sentenced, pretrial detainees who have not yet been convicted and individuals who are civilly committed are entitled to "at least as great as the Eighth Amendment protections available to a convicted prisoner." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Accordingly, pretrial detainees and civilly committed individuals are entitled to the more heightened protections under the Fourteenth Amendment. *See id.*

### A. Defendant Amaker

Plaintiff contends Defendant Amaker violated his Fourteenth Amendment rights by failing to conduct a security round at approximately 6:00 a.m. on April 29, 2017. (ECF No. 1, Complaint at ¶¶ 84-93.) Plaintiff argues that, under the Fourteenth Amendment, he is entitled to a safe and secure facility, and Defendant Amaker willfully and wantonly breached his duty to protect Plaintiff's health and safety. (*Id.* at ¶ 92.) Plaintiff alleges that as a result of Defendant Amaker's failure, Plaintiff did not receive prompt medical attention for his condition. (*Id.* at ¶ 91.) The Court construes Plaintiff's claim as a failure-to-protect claim.

The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The appropriate standard for a Fourteenth Amendment failure-to-protect claim is whether the defendant demonstrated "deliberate indifference" for the plaintiff's health and safety. *See id.* at 834; *see also A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 587 (3d Cir. 2004) (applying the same failure-to-protect standard under both the Eighth and Fourteenth Amendment claims); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("This Court has applied the same

standard to a failure-to-protect claim under the Fourteenth Amendment as under the Eighth Amendment."). "'Deliberate indifference' is a subjective standard whereby 'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Harvey v. Gloucester Cty. Jail*, Civ. No. 18-1797, 2018 WL 4735738, at *3 (D.N.J. Oct. 2, 2018) (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)). It is not enough that an officer "should have known of the risk," the officer must have had actual knowledge. *See Beers Capitol*, 256 F.3d at 133. A plaintiff may, however, demonstrate that "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

Here, Plaintiff has failed to demonstrate that Defendant Amaker was deliberately indifferent to his health and safety. There is no support for the fact that Defendant Amaker knew Plaintiff knew had fallen ill in his cell, let alone that Plaintiff even felt unwell or that there existed any risk to Plaintiff's health. Moreover, when another resident alerted Defendant Amaker to Plaintiff's condition, Defendant Amaker immediately called for help and attended to Plaintiff. Accordingly, Plaintiff has not shown that Defendant Amaker had any knowledge about a risk of Plaintiff's health or that he acted indifferently towards Plaintiff's safety. Therefore, this claim will be dismissed without prejudice.

### B. Defendants Mannava, Paden, and Doe

Plaintiff next raises denial of medical care claims against Defendants Mannava, Paden, and Doe. (ECF No. 1, Complaint at ¶¶ 96-116.) To establish a denial of medical care violation under the Fourteenth Amendment, a plaintiff must show: "(i) a serious medical need, and (ii) acts or omissions by [the Named Officials] that indicate deliberate indifference to that need." *Mattern v. City of Sea Isle*, 657 F. App'x 134, 138 (3d Cir. 2003) (quoting *Natale*, 318 F.3d at 582)). A serious medical need is one that "'has been diagnosed by a physician as requiring

7

treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 139 (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.3d 326, 347 (3d Cir. 1987). An official exhibits deliberate indifference to that serious medical need if they "know of and disregard an excessive risk to [a complainant's] health or safety." *Farmer*, 511 U.S. at 837. Significantly, allegations of medical malpractice or negligence, without a culpable state of mind, will not suffice. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976); *see also Navolio v. Lawrence Cty.*, 406 F. App'x 619, 622-23 (3d Cir. 2011).

The Third Circuit has found "deliberate indifference" exists in various circumstances, including "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir.1993)). The Third Circuit has also held "deliberate indifference" exists where a prison official continues a course of medical treatment "in the fact of resultant pain and risk of permanent injury." *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 109-11 (3d Cir.1990)). Significantly, deliberate indifference is often not found when "some level of medical care has been offered to the inmate." *Coudriet v. Vardaro*, Civ. No. 11-185, 2013 WL 1673137, at *5 (W.D. Pa. Mar. 19, 2013), *report and recommendation adopted*, Civ. No. 11-185, 2013 WL 1668225 (W.D. Pa. Apr. 17, 2013), *aff'd*, 545 F. App'x 99 (3d Cir. 2013).

  i.  *Defendant Mannava*

Plaintiff alleges Defendant Mannava demonstrated deliberate indifference to his serious medical needs when she ignored his request to see a urologist and when she failed to diagnose him with a UTI. (ECF No. 1, Complaint at ¶¶ 98-104.) Plaintiff states that on three occasions

prior to April 29, 2017, he complained to Defendant Mannava about abdominal pain and difficulty urinating, but his requests for treatment went "largely ignored," including his request to visit a urologist. (*Id.* at ¶¶ 77, 97.) Instead, Plaintiff states Dr. Mannava ordered blood tests, but never diagnosed him with a UTI. (*Id.* at ¶¶ 78-79.) Plaintiff submits Defendant Mannava should have known that he was suffering from a UTI, but she "misdiagnosed and mistreated" him. (*Id.* at ¶ 98.)

Plaintiff has not established that Defendant Mannava acted with deliberate indifference towards his serious medical needs. Plaintiff states that when he complained of abdominal pain and difficulty urinating, Defendant Mannava provided him with blood tests in an attempt to investigate Plaintiff's complaints. This fact does not demonstrate that Defendant Mannava refused to provide treatment, that she delayed necessary medical treatment based upon a non-medical reason, or that she attempted to prevent Plaintiff from receiving needed medical services. *See Rouse*, 182 F.3d at 197. In fact, Plaintiff's claim that Defendant Mannava "misdiagnosed and mistreated" him demonstrates that Defendant Mannava did attempt to treat Plaintiff for his ailments and provide him "some level of medical care." *See Coudriet*, 2013 WL 1673137, at *5. Defendant Mannava's misdiagnosis of Plaintiff amounts to, at best, a medical malpractice or negligence claim, which does not demonstrate a denial of constitutional right. *See Coudriet*, 2013 WL 1673137, at *5 ("[M]ere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim"); *see also Jackson v. Camden Cty. Corr. Facility*, Civ. No. 12-7538, 2013 WL 1844636, at *3 (D.N.J. Apr. 29, 2013) (holding plaintiff's misdiagnosis of tuberculosis was not actionable under § 1983 and was better suited as a state law tort claim or medical malpractice claim). Consequently, Plaintiff has not demonstrated a Fourteenth Amendment violation. His claim will be dismissed without prejudice.

*ii.    Defendants Paden and Doe*

Plaintiff asserts Defendants Paden and Doe also violated his Fourteenth Amendment rights by providing him with inadequate medical care. (ECF No. 1, Complaint at ¶¶ 108-116.) Plaintiff submits that Defendants Paden and Doe knew, or should have known, that he was not suffering from an opiate overdose and that their administration of Narcan was unnecessary and improper. (*Id.* at ¶ 109.) Plaintiff contends Defendants' misdiagnosis demonstrated a willful and wanton refusal to provide him with proper medical treatment. (*Id.* at ¶¶ 113-114.)

Plaintiff fails to state a claim against Defendants Paden and Doe. After Plaintiff became ill and was taken to the medical unit, Defendants Paden and Doe supplied him with oxygen, checked his vital signs, and administered an EKG test. (*Id.* at ¶¶ 67-69.) Unnamed medical personnel also dialed 9-1-1. (*Id.* at ¶ 68.) Defendant Paden then administered three doses of Narcan to Plaintiff, after which Plaintiff was temporarily revived. (*Id.* at ¶ 69.) None of these facts set forth by Plaintiff demonstrate that Defendants Paden or Doe intentionally refused to provide Plaintiff with treatment, unnecessarily delayed medical treatment based upon a non-medical reason or attempted to prevent Plaintiff from receiving needed medical services. *See Rouse*, 182 F.3d at 197. To the contrary, Defendants Paden and Doe administered the Narcan to Plaintiff in an effort to provide him with prompt medical treatment. While Defendants Paden and Doe may have misdiagnosed Plaintiff as suffering from an opiate overdose, they did not demonstrate deliberate indifference towards Plaintiff's serious medical need. As stated previously, claims of negligence or medical malpractice do not rise to the level of a constitutional violation. *See Coudriet*, 2013 WL 1673137, at *5; *see also Jackson v. Camden Cty. Corr. Facility*, 2013 WL 1844636, at *3). Accordingly, Plaintiff's claim against Defendants Paden and Doe will be dismissed without prejudice.

### C. Defendants Soliman and Brewer

Plaintiff also alleges Defendants Soliman and Brewer violated his Fourteenth Amendment rights because they were in charge of enforcing proper medical procedures at the STU and they "knew or should have known that Defendants Mannava, Paden, and Doe were capable of misdiagnosing" him. (ECF No. 1, Complaint at ¶¶ 118-119.) Plaintiff contends the failure of Defendants Soliman and Brewer to enforce proper medical procedures directly caused him to suffer "severe and measurable injuries." (*Id.* at ¶ 119.)

Generally, supervisory officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Under § 1983, a plaintiff is required to demonstrate that each defendant had "'personal involvement in the alleged wrongdoing.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") There are, however, two ways that a supervisor-defendant may be held liable. *See Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *rev'd on other grounds by Taylor v. Barkes*, — U.S. — 135 S. Ct. 2042, 2043, 192 L.Ed.2d 78 (2015). First, a supervisor may be held liable if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586) (alteration in original). Second, a supervisor may be held liable if they "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (quoting *A.M. ex rel. J.M.K.*, 372 F.3d at 586).

11

Here, Plaintiff has not alleged any personal involvement of Defendants Soliman or Brewer in the incident that occurred on April 29, 2017, or its attendant circumstances. Plaintiff has also not alleged any policy or practice that Defendants Soliman and Brewer established or maintained that would have directly caused the alleged constitutional harm. Additionally, Plaintiff has failed to allege that either Defendant Soliman or Brewer somehow participated in violating his rights, directed others to violate his rights, or knew that medical staff were violating his rights. Plaintiff's sole, bare allegation is that Defendants Soliman and Brewer "knew or should have known" that Defendants Mannava, Paden, and Doe were capable of misdiagnosing a patient and, as a result, should have enforced proper medical procedures at the STU. Plaintiff does not provide any facts to support any such knowledge and submits only a bald assertion. Accordingly, Plaintiff has not pleaded sufficient facts, accepted as true, to state a claim. *See Gibney*, 547 F. App'x at 113. Plaintiff's claim against Defendants Soliman and Brewer is dismissed without prejudice.

### D. Defendants Slaughter, Fisher, and Raupp

Plaintiff next alleges Defendants Slaughter, Fisher, and Raupp, who were administrators at the STU, violated his Fourteenth Amendment rights when they failed to repair the broken elevator in the south housing unit of the STU. (ECF No. 1, Complaint at ¶¶ 127-35.) Plaintiff states that each of these defendants were responsible for the STU's daily operations and each possessed the authority to repair the STU's broken elevator. (*Id.* at ¶¶ 127-28.) Plaintiff submits the defendants "knew or should have known that because said elevator was in a state of disrepair, unconscious residents who are being taken off either the second or third floors of the housing unit, for transport to the STU's medical department, must be carried down a flight of metal stairs" which unnecessarily places the life of the residents in jeopardy. (*Id.* at ¶ 130.) Plaintiff contends that the defendants' "neglect" in repairing the elevator caused him to be carried

"unsympathetically" down the stairs, where he "almost" fell out of his wheelchair. (*Id.* at ¶ 133.) Plaintiff states this "could have" led to him tumbling down the stairs and suffering injury or death. (*Id.* at ¶ 126.)

At the outset, the Court notes that it is unclear what federal constitutional violation, if any, Plaintiff is attempting to raise. Liberally construing Plaintiff's Complaint, it appears he may be attempting to assert a conditions of confinement claim. Accordingly, this Court will analyze Plaintiff's claim as one raising a conditions of confinement issue.

The Due Process Clause of the Fourteenth Amendment forbids punishments of pretrial detainees and civilly committed individuals. *See Bell*, 441 U.S. at 535-37; *see also Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991) Conditions of confinement may amount to such punishment if they cause a plaintiff "unnecessary and wanton infliction of pain." *Wilson*, 501 U.S. at 297-98. Under this claim, a plaintiff must demonstrate that he was deprived of the "minimal civilized measure of life's necessities." *Id.* at 298. The Supreme Court has held such basic human needs include, "food, clothing, shelter, medical care, and reasonable safety." *Duran v. Merline*, 923 F. Supp. 2d 702, 719 (D.N.J. 2013) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). To establish a conditions of confinement claim, a plaintiff must meet a two-prong test containing both an objective and a subjective component.[3] *Wilson*, 501 U.S. at 298; *see also Allah v. Bartkowski*, 574 F. App'x 135, 139 (3d Cir. 2014). The objective component inquires whether the deprivation was "sufficiently serious," and the subjective component inquires whether an official acted with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298. In analyzing the components of the standard, it is important to consider whether the plaintiff

---

[3] When considering a non-medical conditions of confinement claim, the applicable standard is the same under both the Eighth and Fourteenth Amendments. *See Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993).

"was subjected to genuine privation and hardship over an extended period of time." *McKnight v. Taylor*, Civ. No. 12-1684, 2012 WL 5880331, at *4 (D.N.J. Nov. 20, 2012); *see also Bell*, 441 U.S. at 542.

In the instant case, Plaintiff has not demonstrated that his lack of access to an elevator after he became ill was a sufficiently serious deprivation. Plaintiff has not alleged facts demonstrating that an elevator is even a basic human need. *See Shariff v. Coombe*, 655 F. Supp. 2d 274, 301 (S.D.N.Y. 2009) (stating the plaintiffs' inability to access a functional elevator was "not the kind of deprivation" that denied a basic human need); *see also Cannon v. Dewberry*, Civ. No. 17-144, 2019 WL 2465023, at *10 (E.D. Tex. Jan. 17, 2019) (stating that requiring a prisoner to use the stairs when an elevator is out of service is a "circumstance familiar to most free world people who live or work in buildings containing elevators"), *report and recommendation adopted*, Civ. No. 17-144, 2019 WL 1275340 (E.D. Tex. Mar. 19, 2019). Moreover, Plaintiff has not demonstrated that he was subjected to genuine privation and hardship over an extended period of time. *See Bell*, 441 U.S. at 542. Plaintiff fell ill and once needed assistance being transported to the STU's medical unit. While an elevator may have been convenient, Plaintiff's one-time "need" for an elevator did not cause him to suffer a hardship over an extended period of time. Accordingly, Plaintiff's claim will be dismissed without prejudice.

### E. State Law Claims

In his Complaint, Plaintiff also raises state law claims. Specifically, Plaintiff alleges that his rights were violated under Article 1, Paragraph 1 of the New Jersey State Constitution. (ECF No. 1, Complaint at ¶¶ 137-44.) This section of the New Jersey Constitution provides:

> All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying

14

> and defending life and liberty, of acquiring, possessing, and
> protecting property, and of pursuing and obtaining safety and
> happiness.

N.J. Const. art. 1, ¶ 1. The Court construes this claim as Plaintiff's attempt to also raise his § 1983 claims under New Jersey's analogous civil rights act. *See* N.J. Stat. Ann. § 10:6-2. Plaintiff also submits that Defendants Amaker, Mannava, Paden, and Doe are liable under N.J. Stat. Ann. § 30:4-24.2, which codifies the rights of patients civilly committed for treatment of mental illnesses and developmental disabilities. (ECF No. 1, Complaint at ¶¶ 146-54.)

Since the Court has dismissed Plaintiff's federal claims, the remaining potential basis for this Court's jurisdiction over any state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *see also Growth Horizons, Inc. v. Delaware Cty., Pa.*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *See United Mine Workers*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. Here, the Court has dismissed Plaintiff's federal claims at the earliest

possible stage of the proceedings and exercises its discretion to decline supplemental jurisdiction over any remaining state law claims at this time. If Plaintiff submits an Amended Complaint that cures the deficiencies in his federal claims, the Court will address any supplemental state law claims at that time.

## V. CONCLUSION

The claims against Defendants Mannava, Paden, Doe, Soliman, and Brewer in their official capacities for monetary damages are dismissed with prejudice. The claims against Defendants Slaughter, Fisher, and Raupp in their official capacity for injunctive relief are dismissed without prejudice. The remaining claims against Defendants Amaker, Mannava, Paden, Doe, Soliman, Brewer, Slaughter, Fisher, and Raupp each in their individual capacities are also all dismissed without prejudice. The Court declines to exercise supplemental jurisdiction over the state law claims. To the extent Plaintiff can cure the deficiencies explained in this Opinion, he may submit a proposed Amended Complaint within 30 days. An appropriate Order follows.

Date: _Aug 28_, 2019

Madeline Cox Arleo, U.S.D.J.